**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION**

| | | |
|---|---|---|
| **KIMBERLY SIMS,** § | | |
| § | | |
| Plaintiff, § | | |
| § | | |
| vs. § | **CIVIL ACTION NO.** 4:21-cv-03695 | |
| § | | |
| § | | |
| **SCHENKER, INC.,** § | | |
| § | | |
| Defendant. § | **JURY TRIAL DEMANDED** | |

**PLAINTIFF'S ORIGINAL COMPLAINT**

TO THE HONORABLE JUDGE OF SAID COURT:

COMES NOW, Kimberly Sims ("Sims" or "Plaintiff"), Plaintiff in the above-styled and numbered cause, and files her Original Complaint, complaining of Schenker, Inc. ("Schenker" or "Defendant"), and for cause of action, would show as follows:

## I.   INTRODUCTION

1. This action seeks back pay, front pay, compensatory damages, punitive damages, attorneys' fees, expert witness fees, taxable costs of court, and pre-judgment and post-judgment interest for race discrimination and retaliation suffered by Sims in the course of her employment with Defendant.  Sims complains that she was discriminated against regarding the terms and conditions of her employment because of her race and gender and that she was subsequently retaliated against for engaging in protected activity.  Plaintiff demands a jury on all issues triable to a jury.

## II. PARTIES

2. Kimberly Sims is a citizen of the United States and is currently a resident of Houston, Texas.

3. Schenker, Inc. is a foreign corporation with a principal place of business at 18851 Kenswick Drive, Humble, Texas 77338. Defendant also regularly conducts business in this judicial district, including in Houston, Texas. Defendant's registered agent for service of process is CT Corporation System, who may be served at 1999 Bryan Street, Suite 900, Dallas, Texas 75201.

## III. JURISDICTION AND VENUE

4. This is a race discrimination, gender discrimination, and retaliation suit arising under Title VII of the Civil Rights Act of 1964, as amended ("Title VII").

5. The unlawful employment practices were being committed within the jurisdiction of the United States District Court for the Southern District of Texas–Houston Division, as all of the acts and conduct charged herein occurred in this District.

6. This Court has jurisdiction over all claims in this action. The amount in controversy is within the jurisdictional limits of this Court.

## IV. PROCEDURAL REQUISITES

7. Sims filed a Charge of Discrimination ("Charge") against Defendant under Charge Number 460-2019-05978 with the U.S. Equal Employment Opportunity Commission ("EEOC") on or about February 7, 2020. In her Charge, Sims asserted that Defendant discriminated against her because of her race, gender and religion. In her Charge, Sims asserted that she was terminated on August 19, 2019 in retaliation for complaining about race and gender discrimination.

8. On August 13, 2021, the EEOC issued a Notice of Right to Sue letter, entitling Sims to file an action in this Court.

9. The filing of this lawsuit has been accomplished within ninety (90) days of Sims' receipt of the Notice of Right to Sue letter.

10. All conditions precedent to filing this cause of action have been met.

## V.    FACTS

11. Schenker hired Ms. Sims as a Human Resources manager beginning in September 2014.

12. Schenker promoted Ms. Sims to Senior Human Resources Manager in 2018, at which point she became the company's only African American, Senior Human Resources Manager.

13. In that role, Ms. Sims reported to Dave Grant, Schenker's only African American Human Resources Director.

14. Throughout Ms. Sims' employment, Billy Martin, a white male operations manager, treated her rudely and unprofessionally because of her race and gender. Mr. Martin also treated other black female employees poorly.

15. Schenker received Ms. Sims' first complaint about Mr. Martin in 2014.

16. Ms. Sims complained to Mike Borges, the Vice President of Contract Logistics, and to Teresa Bratcher, an HR Manager.

17. After Ms. Sims complained about Mr. Martin's behavior for months, he was transferred to another posting outside of Texas.

18. In early 2019, Ms. Sims applied for a promotion for which she was fully qualified, as were other African American candidates. Schenker instead hired a white female from outside the company to the position, who was not qualified.

19. In 2019, Schenker returned Mr. Martin to its Texas operations where he was once more able to continue his negative treatment of Ms. Sims and other African American employees.

20. Mr. Martin wanted Ms. Sims to sign off on unethical disciplinary documentation.

21. When Ms. Sims refused to sign off on unethical disciplinary documentation, Mr. Martin contacted Mike Borges and said that Ms. Sims was no longer allowed to step foot in the Cisco building where Mr. Martin worked.

22. Mr. Martin also encouraged other white male supervisors to treat Ms. Sims rudely and unfairly because of her race and gender.

23. Around March 2019, Mr. Martin referred to Ms. Sims as a "black bitch" to her assistant, Mr. Theo Montague.

24. Schenker (specifically Ms. Botella-Bell) received another complaint from Ms. Sims about Mr. Martin's discrimination and he was finally terminated that same month - March 2019.

25. After Mr. Martin was fired, he contacted other managers asking them to contact the ethics line to file false complaints against Ms. Sims.

26. After Ms. Sims' latest complaint against Mr. Martin, Schenker began retaliating against Ms. Sims by taking projects away from her and scrutinizing her work.

27. After Mr. Martin was fired, Mr. Borges, a white manager, and other white male supervisors, including Judah Tibbit and John Pappas, continued to treat Ms. Sims poorly because of her race and gender.

28. Mr. Pappas and Mr. Tibbit were friends with Mr. Martin.

29. Mr. Pappas was very combative and argumentative with Ms. Sims. He refused to follow the guidance she provided as an HR professional. He falsely accused Ms. Sims of only hiring black people.

30. Mr. Tibbit wrongly assumed that Ms. Sims was related to another employee – Sharonda Washington - simply because they both happened to be black.

31. Ms. Sims urged Mr. Tibbit and Mr. Pappas via email to stop abusing her, harassing her, and making false accusations against her.

32. In response to Ms. Sims' email, Mr. Pappas and Mr. Tibbit made new, false accusations against her.

33. Ms. Botella-Bell heard complaints from Ms. Sims regarding Mr. Tibbit and Mr. Pappas.

34. Ms. Botella-Bell did not investigate the complaints against Mr. Tibbit and Mr. Pappas. Instead, she began an investigation into Ms. Sims.

35. Schenker did not interview Ms. Sims – or allow her to defend herself - as part of the investigation into allegations against her.

36. Schenker fired Ms. Sims on August 19, 2019.

37. Schenker initially replaced Ms. Sims with an African American employee with lighter colored skin than Ms. Sims. That person quit within a week – at which point Schenker replaced Ms. Sims with Jackie Olney, a white person.

## VI. DISCRIMINATION UNDER TITLE VII

38. Plaintiff incorporates by reference all of the foregoing allegations in each of the paragraphs above as fully set forth herein.

39. Defendant discriminated against Plaintiff in violation of Title VII of the Civil Rights Act of 1964, as amended ("Title VII").

40. Plaintiff was subjected to different terms and conditions of employment and was ultimately terminated by Defendant because of her race and because of her gender.

41. Defendant's termination of Plaintiff's employment and subjecting Plaintiff to different terms and conditions of employment constitute race and gender discrimination under Title VII of the Civil Rights Act of 1964, as amended ("Title VII").

42. As a result of Defendant's discriminatory actions, Plaintiff has suffered lost wages in the past and future, loss of future earning capacity, emotional pain and suffering, and mental anguish, all of which were caused by Defendant's treatment of Plaintiff. In all probability, Plaintiff will continue to suffer such damages in the future.

43. Further, Defendant acted with malice or, in the alternative, with reckless indifference to the federally protected rights of Plaintiff.

## VII. RETALIATION UNDER TITLE VII

44. Each and every allegation contained in the foregoing paragraphs is realleged as if fully set forth herein.

45. Plaintiff engaged in conduct protected under Title VII. Specifically, when Plaintiff put Defendant on notice of the gender and racial discrimination and when she requested her harassers to stop.

46. Plaintiff was subjected to an adverse employment action following her engagement in protected conduct. Specifically, Plaintiff was terminated after she complained.

47. There was a causal link between the protected conduct and the adverse employment actions.

## VIII. DAMAGES

48. As a result of Defendant's conduct, Plaintiff seeks the following relief: (1) back pay, including, but not limited to, her salary, bonuses, and benefits; (2) reinstatement, or if reinstatement is deemed not feasible, front pay, including, but not limited to, her salary, bonuses, and benefits; (3) costs of court and attorneys' fees; (4) mental anguish and emotional distress in the past and future; and (5) compensatory damages.

49. Additionally, since Defendant's actions were committed maliciously, willfully, or with reckless indifference to Defendant's federally protected rights, Plaintiff is entitled to recover punitive, liquidated, and/or exemplary damages in an amount sufficient to deter Defendant and others similarly situated from this conduct in the future.

## IX. JURY DEMAND

50. Plaintiff requests a trial by jury on issues triable by a jury in this case.

## X. PRAYER

WHEREFORE, Plaintiff Kimberly Sims respectfully prays that upon final trial hereof, this Court grant her appropriate back pay, including, but not limited to, her salary, bonuses, and benefits; reinstatement, or if reinstatement is deemed not feasible, front pay, including her salary, bonuses, and benefits; mental anguish and emotional distress in the past and the future; compensatory damages; punitive damages as allowed by law; reasonable attorneys' fees both for the trial of this cause and any and all appeals as may be necessary; all expert witness fees incurred in the preparation and prosecution of this action; pre-judgment and post-judgment interest as allowed by law; taxable court costs; and any such additional and further relief that this Court may deem just and proper.

Respectfully submitted,

**SHELLIST | LAZARZ | SLOBIN LLP**

By:   */s/ Paul R. Harris*
Paul R. Harris
State Bar No. 24059905
11 Greenway Plaza, Suite 1515
Houston, Texas 77046
(713) 621-2277 | f: (713) 621-0993
pharris@eeoc.net

*Attorney for Plaintiff Kimberly Sims*